IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DARRYL WALKER, | ) | CV-06-3086-MO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOSMAN, J.,**

Plaintiff Darryl Walker brings this action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and for supplemental security income ("SSI") under Title XVI of the Act. This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, I find the Commissioner's final decision was not based on the proper legal standards and is not supported by substantial evidence. I therefore REVERSE AND REMAND that decision for the calculation and award of benefits.

## BACKGROUND

Mr. Walker was born on August 7, 1964, and has completed one year of college. His work experience includes employment as a movie theater manager, store merchandiser,

warehouse manager, pre-school teacher, construction courier, and airport transport driver.  Tr. 23.[1]  Mr. Walker alleges the onset of a disability on May 16, 2002, when he twisted his body while lifting a heavy box; this incident led to a disc bulge and pinched nerve that prevent him from sitting, standing, walking, or bending without pain.  Tr. 23, 25.  He filed for disability on December 26, 2002, and his application was denied both initially and on reconsideration.  He timely filed a request for a hearing, which was held before an Administrative Law Judge ("ALJ") on September 13, 2005.  The ALJ issued an opinion on January 26, 2006, finding Mr. Walker is not disabled; this is the Commissioner's final decision.

## THE COMMISSIONER'S DISABILITY ANALYSIS

The initial burden of proof rests upon a claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step evaluation process for determining whether a person over the age of eighteen is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  If the claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider the subsequent steps.  20 C.F.R. § 404.1520.  If the evaluation proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of the

[1] Citations are to the page(s) indicated in the official transcript of the administrative record.

sustained work-related activities the claimant can still do on a regular and continuing basis,

despite the limitations imposed by his impairments.  20 C.F.R. §§ 404.1520(e), 404.1545; Social

Security Ruling (SSR) 96-8p.  At step four, the Commissioner must determine whether the

claimant retains the RFC to perform work he has done in the past; if he does, he is not disabled.

20 C.F.R. § 404.1520(f).  At step five, the Commissioner must determine whether the claimant

can perform other work that exists in the national economy.  20 C.F.R. § 404.1520(e), (g);

Bowen, 482 U.S. at 142.  At this step, the burden shifts to the Commissioner to show that a

significant number of jobs exist in the national economy that the claimant can do.  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If the Commissioner meets this burden, then the

claimant is not considered disabled.  *See id.*; 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

The ALJ concluded Mr. Walker suffers from severe impairments, but that he retains the

RFC to perform work requiring a sedentary level of physical exertion with limited bending or

twisting, and that he is required to occasionally stand up to alleviate pain.  The ALJ found during

step four of the disability analysis that Mr. Walker cannot perform the same work he has done in

the past.  She found at step five, however, that he can perform work that exists in substantial

numbers in the national economy, and that he is therefore not disabled.

In reaching these conclusions, the ALJ found Mr. Walker's testimony was not entirely

credible, and also discredited the testimony of two physicians.  She also elicited testimony from

an impartial vocational expert ("VE"), who testified that Mr. Walker could not perform his past

relevant work.  As mentioned above, the ALJ agreed with this conclusion.  The VE further

testified that someone of Mr. Walker's age, education, RFC, and vocationally relevant past work

experience could perform work as a charge account clerk, an addresser, or an optical goods assembler. Again, the ALJ agreed with the VE, and found Mr. Walker could make a successful adjustment to work that exists in significant numbers in the national economy. She therefore found he was not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and if the factual findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" in turn means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The ALJ is responsible for resolving conflicts in the medical evidence and for determining credibility. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *See Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002). Rather, the Commissioner's decision must be upheld "where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

Mr. Walker argues the ALJ erred by: (1) finding his testimony was not credible; (2) rejecting the medical opinions of two examining physicians; (3) making an erroneous RFC

determination; (4) providing the VE with a legally insufficient vocational hypothetical; and (5) making an improper finding at step five.  I evaluate each of these alleged errors below.

## I.        The ALJ's Credibility Determination

Mr. Walker contends the ALJ wrongly discredited his testimony.  Mr. Walker testified that he is unable to work because he has constant thoracic pain in his back and left flank, that he cannot sit for more than ten minutes without pain, that he must lie down three times per day for pain relief, and that the pain causes insomnia at night.  Tr. 492-95.  The ALJ found this testimony was "not convincing" and was "an exaggeration" when compared with both his conduct and the medical evidence.  Tr. 28-29.

When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of his symptoms only by providing clear and convincing reasons based on specific findings.  *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citations omitted).  The ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *See Smolen*, 80 F.3d at 1284.

The ALJ offered a number of reasons for finding Mr. Walker's testimony regarding his pain and other symptoms of his spinal condition unconvincing.  Tr. 28-29.  None of those reasons are clear and convincing, however.  She first attempted to point to alleged inconsistencies between

Page 5 - OPINION AND ORDER

Mr. Walker's testimony and his conduct.  She cited Mr. Walker's gym membership, for example, reasoning that he must be exaggerating the severity of his pain if he is able to work out and tolerate some exercise.  His physical therapists advised Mr. Walker to continue his therapy through his own workouts, however, and he should not be penalized for following medical advice. Further, Mr. Walker testified that he was no longer able to work out as of July 2005 due to worsening pain.  Tr. 496-97, 505.

The ALJ also discredited Mr. Walker's testimony because of his alleged ability to care for his children.  Mr. Walker is a single father to two teenage sons.  He testified and the ALJ noted that both boys were old enough to—and  did, in fact—largely care for themselves and do their own cooking and cleaning.  In addition, the Commissioner wrongly asserts in his brief that Mr. Walker helped care for a young child eighty-seven hours per week, when in fact he only did so approximately eighty-seven hours per month.  Mr. Walker also testified he was able to lie down if he needed to while caring for the young child, and that the child plays independently with toys. Tr. 492-93.  It is generally true that full-time care of a young child is more than equivalent to a forty hour per week job.  But Mr. Walker's care for the young child was only part-time.  Neither that, nor his sporadic care for his older children, equate to a finding that he is capable of sustaining a forty-hour per week job.  Notations throughout the record demonstrate that these and other daily activities often increased his pain and exacerbated his spinal problems.  *See, e.g.* Tr. 196 (preparing dinner for his family caused flare up of thoracic pain resulting in spasm with subluxation); *see also* Tr. 197 (nothing Mr. Walker had to seek assistance from his seventy-year-old father when moving items from a storage unit because he was unable to do so himself).

Overall, the ALJ attempts to paint a picture of Mr. Walker as being capable of "significant

Page 6 - OPINION AND ORDER

activity"—e.g., he participates to a limited extent in church, he took a required trip to California for a workers' compensation hearing, he attempted to help a friend move, and he attempted to join friends in a hunting trip.  Tr. 29.  But disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (a claimant's ability to engage in some daily activities is not fatal to his claim unless the level of activity is inconsistent with his alleged limitations).  None of the activities the ALJ cited are inconsistent with Mr. Walker's claimed limitations.  For example, Mr. Walker reported decreased participation in church activities due to difficulty from sitting for long periods of time. Tr. 501.  The record also shows Mr. Walker's required trip to California exacerbated his spinal problems, and that his hunting trip was mostly spent sitting or lying down rather than participating in any activities.  Tr. 387, 502-03; s*ee also Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (noting that a claim of pain-induced disability is not discounted by the claimant's capacity to engage in periodic restricted travel).

The ALJ also discredited Mr. Walker's testimony based on medical evidence.  For example, she referenced one chart note from Dr. Blum, Mr. Walker's chiropractor, from May of 2005 noting a decrease in pain and some improvement.  But I cannot find that one mention of improvement impugns Mr. Walker's credibility regarding his ongoing pain and limitations.  On other occasions, Dr. Blum noted decreases in pain only to be followed by increases in pain and muscle spasms.  *See* Tr. 393 (describing Mr. Walker's treatments during six appointments in October 2003, including one instance where he came in several days before his next scheduled appointment because of increasing pain).  Dr. Blum's statements must be read in the context of the overall diagnostic picture he draws; some limited improvement does not mean Mr. Walker's

impairments no longer seriously affect his ability to function in a workplace. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (citation omitted) (finding that a treating psychiatrist's chart note that the claimant had made some improvement had to be read in the context of the overall diagnostic picture, and that some improvement did not equate to an ability to function in a workplace).

The ALJ further characterized Mr. Walker as having a "cavalier attitude" about his treatment and being disinterested in his therapy sessions, and further characterized his discharge from physical therapy as being connected to this alleged disinterest. Tr. 29. These statements were apparently based on Mr. Walker's tardiness to one of his many physical therapy appointments and his angry statement that he had more important things going on in his life than worrying about being a few minutes late. The ALJ's selective review of the physical therapist's notes do not impugn his credibility, however. For example, the same physical therapist also noted that Mr. Walker "seems motivated to improve his condition and return to work." Tr. 257. Further, Mr. Walker's discharge report indicates that physical therapy could not provide any further improvement, and not that he was failing to progress due to disinterest. Overall, Mr. Walker participated in two rounds of physical therapy lasting months, and was late to only one treatment out of nearly forty.

Finally, the ALJ does not cite to a single physician who treated or evaluated Mr. Walker as opining that he was malingering or that his pain complaints were disproportionate to the objective medical findings regarding his condition. When there is no evidence of malingering, an ALJ is entitled to discredit a claimant's testimony regarding the severity of his symptoms only by providing clear and convincing reasons based on specific findings. *Smolen*, 80 F.3d at 1281-82.

Page 8 - OPINION AND ORDER

As discussed above, none of the ALJ's reasons for discrediting Mr. Walker's testimony are clear and convincing. I therefore find the ALJ's credibility finding is not supported by substantial evidence, and is given no weight; Mr. Walker's testimony as to his symptoms and limitations is credited as true as a matter of law. *See, e.g., Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (finding an ALJ's improper rejection of claimant's testimony leads to crediting that testimony as a matter of law).

## II.    The Medical Opinions of Drs. Corson and Gottschalk

Mr. Walker contends the ALJ failed to give clear and convincing reasons for not crediting the opinions of John Corson, M.D and Guy Gottschalk, M.D. Both of these doctors opined that Mr. Walker would require the opportunity to lie down for certain portions of an eight-hour workday. Specifically, Dr. Gottschalk concluded Mr. Walker would be able to stand for no more than one hour at a time or four hours out of an eight-hour workday; that he would be able to sit for not more than one hour at a time or four hours out of an eight-hour workday; and that he would need to lie down for thirty minutes once or twice a day, once or twice per week, for flare-ups of back pain. Tr. 185-86. He further concluded Mr. Walker would need lifetime medical and orthopedic care to control his back pain. Tr. 185-86. Dr. Corson opined that Mr. Walker was unable to do work requiring upright activity, though he could probably work at a job where he was sitting if he had an opportunity to lay down for a portion of the day. Tr. 466. Dr. Corson also noted it was probable that Mr. Walker's spinal condition would progress and that his disability would increase because there is no treatment for his condition.[2]

---

[2] Other physicians also noted that surgery and other procedures would not improve Mr. Walker's condition or were risky and would produce uncertain results. Tr. 321 (Mr. Bowser, A.N.P.); Tr. 326 (Dr. Ali); Tr. 343 (Dr. Peterson); Tr. 417 (Dr. Eckert).

Page 9 - OPINION AND ORDER

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. Even if a medical opinion is contradicted by another doctor, the opinion of an examining doctor can only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. It is unclear whether there is an actual "contradiction" between the opinions of Drs. Corson and Gottschalk and the opinion of any other doctor that treated Mr. Walker; it is possible Drs. Corson and Gottschalk simply found Mr. Walker's pain leads to a greater degree of the same limitations noted by other doctors. It is not necessary to determine whether their medical opinions were truly contradicted, however, because the ALJ's RFC assessment—and the hypothetical scenario she posed to the VE based on that RFC assessment—were not supported by substantial evidence based on any doctor's opinion, and were therefore legally insufficient.

### III.    The ALJ's RFC Determination

In her RFC determination, the ALJ concluded Mr. Walker could do sedentary work with limited bending or twisting, and that he is required to occasionally stand up to alleviate pain. Tr. 32. The ALJ never specified how often Mr. Walker would need to stand up, how long he would be able to sit over an eight-hour period, or what other types of limitations his pain caused, however. The ALJ's RFC assessment therefore failed to comply with Social Security Ruling 96-9p, which requires that, in cases where a claimant is limited to sedentary work, the RFC must specify both how frequently the claimant will need to alternate positions and the length of time he must remain in the alternate position before returning to the original position. Such detail is required in these cases because a worker must be able to sit through most or all of an eight-hour day in order to perform the full range of sedentary work. *Tackett*, 180 F.3d at 1103.

Page 10 - OPINION AND ORDER

The ALJ specifically stated she was discounting the testimony of the doctors who opined Mr. Walker was able to sit for only four hours in an eight-hour workday. She then cited the opinions of Drs. Eden and Kehrli, who opined Mr. Walker was able to sit for six hours during an eight-hour workday. No physician opined that Mr. Walker would be able to sit through an eight-hour workday so long as he was allowed to change positions during the day, however. On the contrary, what emerges from the combination of all the medical testimony is that, in the best case scenario, Mr. Walker is able to sit for only six hours of an eight-hour workday, which is insufficient in order to perform the full range of sedentary work. *See id.* The ALJ's RFC determination, which concluded Mr. Walker could do sedentary work as long as he could occasionally stand up to alleviate pain, was therefore not supported by substantial evidence in the record.

## IV.    The ALJ's Vocational Hypothetical

The ALJ made similar errors when she presented her vocational hypothetical to the VE. Specifically, she asked the VE whether jobs exist in the national economy for an individual of Mr. Walker's age, education, past work experience, and RFC (as described above). Based on that hypothetical, the VE testified Mr. Walker could perform work as a charge account clerk, an addresser, or an optical goods assembler.

Mr. Walker's attorney followed up the ALJ's hypothetical by asking the VE two critical questions. He first asked whether a person who would have to lie down "a couple times a day for let's say at least for 20 minutes" during work time would be precluded from sedentary employment. The VE replied that if an individual had to use work time rather than scheduled breaks to lie down, the person would be likely to lose their job. The attorney next asked whether a

person who could work only six hours out of an eight-hour workday due to their limitations in

sitting and standing would be precluded from sedentary employment. Again, the VE replied this

would not be suitable for the typical eight-hour shift. These questions and answers, which more

accurately reflect Mr. Walker's limitations, demonstrate exactly what was erroneous about the

ALJ's vocational hypothetical: it was unsupported by the evidence in the record. Because the

assumptions in the ALJ's hypothetical are not supported by the record, the VE's opinion that Mr.

Walker is capable of working has no evidentiary value. *See Embrey v. Bowen*, 849 F.2d 418, 422-

23 (9th Cir. 1988) (citation omitted) (finding the opinion of a VE could not be relied on where the

hypothetical questions posed to the VE did not set out all claimant's limitations and restrictions).

### V.    The ALJ's Step Five Determination

The ALJ concluded that "[b]ased on the testimony of the vocational expert," Mr. Walker

could perform the type of sedentary work described by the VE**,** and could make a successful

adjustment to work that exists in significant numbers in the national economy. She therefore

found he was not disabled within the meaning of the Act. Because this finding was based on the

ALJ's erroneous RFC determination and vocational hypothetical, it was improper. As explained

above, Mr. Walker is unable to perform full-time sedentary work, and therefore does not have the

capacity to do work that exists in significant numbers in the national economy. *See Tackett*, 180

F.3d at 1103.

### INSTRUCTIONS UPON REMAND

The ALJ's decision is reversed and remanded for the calculation and award of benefits, and

not for any further development of the record. The decision whether to remand for further

proceedings or for immediate payment of benefits is within the discretion of the court. *See*

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989) (citation omitted).

I find the ALJ (1) improperly questioned Mr. Walker's credibility regarding legitimate limitations associated with his spinal condition; (2) improperly discredited the medical opinions of Dr. Corson and Dr. Gottschalk, who relied on record evidence to confirm Mr. Walker's limitations; (3) made a RFC determination that was legally insufficient and not supported by substantial evidence in the record; (4) posed a vocational hypothetical to the VE that was legally insufficient and not supported by substantial evidence in the record; and (5) made an improper finding that Mr. Walker is capable of making a successful adjustment to work that exists in significant numbers in the national economy. Based on these findings, it is clear Mr. Walker is entitled to an award of benefits, and there is no use for further development of the record. *See Holohan,* 246 F.3d at 1210-11 (finding a remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits).

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's determination that Mr. Walker does not suffer from a disability and is not entitled to DIB or SSI under the Social Security Act is legally insufficient and is not supported by substantial evidence.

The Commissioner's final decision is REVERSED AND REMANDED for the calculation

Page 13 - OPINION AND ORDER

and award of benefits.

IT IS SO ORDERED.

Dated this  3rd  day of December, 2007.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court Judge